Argued January 31; modified March 6, 1934

# GABRIEL ET AL. *v.* COLLIER ET AL.
## (29 P. (2d) 1025)

*John H. Carson,* of Salem (Carson & Carson, of Salem, on the brief), for appellant.

*Walter C. Winslow,* of Salem (William W. McKinney, of Salem, on the brief), for respondents and cross-appellants.

CAMPBELL, J.  This is an action for damages on an alleged conspiracy to defraud.

Plaintiffs, in their complaint, allege, in substance, that during the early part of the year of 1929 they were the owners of an auto park consisting of five acres of real property with certain buildings thereon and certain personal property used in conjunction therewith, consisting of stocks of merchandise, and necessary equipment and utensils and paraphernalia and a small menagerie. The park was situate along the Pacific highway near the town of Hubbard in Marion county, Oregon; that in the early part of May, 1929, at which time a receiver was appointed for said auto park, said park and its equipment was reasonably worth $15,000, with mortgages against it amounting to somewhat more than $5,000. That plaintiffs operated said park as partners; that in the spring of 1930 they had some disagreement over the management resulting in a lawsuit for the dissolution of said partnership, in which suit they stipulated that defendant Lalah Loney should be appointed receiver of said business. They allege that, shortly before said receivership, defendants entered into a conspiracy with a common purpose and design of defeating plaintiffs in the enjoyment of their interest in said premises and of acquiring said interest themselves and in furtherance of said conspiracy they committed the following overt acts:

(a) That defendant Lalah Loney, at the time of her appointment as receiver, was the owner of a mort-

gage of $4,000 on which these plaintiffs were the mortgagors or liable thereon and that Lalah Loney assigned said mortgage to her husband, Earl Loney.

(b) That Frank T. Collier was defendants Loney's attorney and that notwithstanding that plaintiffs had complied with all the terms and conditions of said mortgage, save a payment of interest thereon, he began the foreclosure suit of said mortgage notwithstanding that, prior to the commencement of said foreclosure suit, plaintiff Gabriel had paid to him the sum of $600 to be used to maintain said mortgage in good standing and keep plaintiffs from being in default thereon.

(c) That immediately upon the commencement of said foreclosure proceeding, plaintiff Gabriel went to defendant Collier for the purpose of ascertaining the reason for the commencement of said suit and that defendant Collier advised plaintiff Gabriel that it was not necessary for said plaintiff, who was a defendant in said suit, to appear therein or to file an answer; that her interest would be protected and that she would ultimately and finally get the property back.

(d) That the receiver, when she was appointed, was instructed by the court to make diligent efforts to make a sale of said property and that she failed to do so and that there were bona fide buyers who were willing and able to pay for said concern the sum of $15,000, the reasonable value thereof, but she refused to make the sale and informed said persons that the property was not for sale.

(e) That defendants proceeded with the foreclosure of said mortgage to final decree and that the receiver failed to appear in said foreclosure proceedings and defend the same.

(f) That defendants had execution issued upon the decree of foreclosure and sold the real property to defendant Earl Loney and the receiver sold the personal property to defendant Earl Loney and that on account of the depression plaintiffs have no funds with which to redeem said property from said sale; that the personal property being sold separately from the real property, they have no opportunity for redeeming the same.

(g) That defendants persistently kept plaintiffs in ignorance of what was transpiring and fraudulently represented to parties trying to find and locate plaintiffs that they did not know plaintiffs' whereabouts.

(h) That at the time the receiver took possession under her appointment, the plaintiffs turned over to her $200 for the purpose of taking care of current bills but defendant refused to use said money for the payment of any bills thus giving the business inferior financial standing.

(i) That defendants in the name of Lalah Loney (then Ames) brought an action against plaintiff Heiberg and attached large quantities of personal property belonging to said Heiberg, used in connection with said business; that the attachment was wrongful and fraudulent for the reason that the note upon which the attachment action was brought was secured by a mortgage upon the said premises.

The plaintiffs then alleged that during the entire transaction they relied upon the representations of defendants and believed the same to be true and relied upon said defendants keeping plaintiffs fully informed as to the true state of said proceedings and as to all the information which came to and into the possession of said defendants believing that plaintiffs would be dealt with fairly in connection with the entire trans-

action; that said representations were false and fraudulent as above set forth and that said defendants failed to make known to said plaintiffs the knowledge and information they had with reference to said transaction. They asked for damages in the sum of $10,000.

To this complaint, defendant Collier filed a general denial and the defendants Loney filed an answer to the same tenor and effect.

The cause was tried to a jury. At the close of the evidence defendants moved for a directed verdict which was overruled by the court. The jury returned a verdict in favor of plaintiffs and against defendant Collier in the sum of $5,000 and in favor of defendants Earl Loney and Lalah Loney and against plaintiffs. On the verdict, judgment was entered against defendant Frank T. Collier in the sum of $5,000 and a judgment in favor of the defendants Earl Loney and Lalah Loney dismissing the case against them and judgment for their costs. Defendant Collier appeals, and plaintiffs appeal from the judgment of dismissal in favor of Earl Loney and Lalah Loney.

The record discloses that, during the year 1928, L. Heiberg, one of the plaintiffs herein, bought from Lalah Loney (then Lalah Ames), one of defendants herein, a parcel of real property and certain personal property used in connection therewith, as an auto park, situate on the Pacific highway about one mile north of Hubbard in Marion county, Oregon, for the sum of $14,000. He paid $6,000 cash, and for the balance executed two notes of $4,000 each. One note was secured by a first mortgage and the other by a second mortgage on the premises purchased. He then went into possession of the premises and continued the operation of the park.

In July, 1929, he sold to Josephine Gabriel, his co-plaintiff herein, an undivided one-half interest in said premises and personal property, for $7,000. $3,000 was paid to him in cash and the purchaser assumed the payment of the $4,000 first mortgage. Plaintiff Gabriel thereupon moved onto the premises and she and plaintiff Heiberg conducted the business as a partnership. Shortly after the joint operation was begun, differences and disputes arose between the joint owners, sometimes ending in physical encounters. In April, 1930, plaintiff Gabriel had plaintiff Heiberg arrested for assault and battery on her.

On April 26, 1930, plaintiff Heiberg filed a suit against plaintiff Gabriel for a partition of the premises alleging that the premises could not be divided and asked that they be sold and the proceeds be divided between the partners who were also tenants in common. On the same day plaintiff Gabriel brought suit against plaintiff Heiberg for a dissolution of the partnership and an accounting and asked that a receiver be appointed to take charge of the business. She and her co-plaintiff Heiberg, who was the defendant in that suit, appeared before the honorable circuit court for Marion county with their respective attorneys and stipulated that Mrs. Lalah Loney, one of the defendants herein, be appointed receiver. The court thereupon appointed Mrs. Lalah Loney as such receiver and she shortly thereafter took possession of the premises and business and continued to operate the same until after it was sold out on foreclosure sale.

On the day that the dissolution of partnership suit was filed, Mrs. Loney, through her attorney Mr. F. T. Collier, commenced an action against plaintiff Heiberg individually on the $4,000 note that was secured by the second mortgage, obtained a writ of attachment

and attached the personal property of plaintiff Heiberg. Thereafter plaintiff Gabriel employed attorney Collier to attend to some law business for her in collecting some money which she claimed was due her from the Seaboard Dairy Credit Corporation and also to render her assistance in obtaining possession of the premises in suit herein. Collier filed an action in the circuit court for Multnomah county on behalf of plaintiff Gabriel for $2,500 against the Seaboard Dairy Credit Corporation. The record fails to disclose the final outcome of such action except that sometime thereafter, and before final determination thereof, she took the matter out of Collier's hands and engaged another attorney therein. It appears that Mr. Collier advised her that if the first mortgage on the premises, which she assumed, was foreclosed, she could redeem from such a sale and thereby exclude Mr. Heiberg. Mrs. Loney, who was acting as receiver, assigned her first mortgage to her husband, Earl Loney, one of defendants herein, who on July 16, 1930, after first obtaining permission from the court to sue the receiver, began a suit for foreclosure thereon, making the receiver, Mrs. Loney, and the plaintiffs herein, defendants. In his complaint he alleged that the mortgage provided that the mortgagor should pay the interest promptly and should pay all taxes levied against the property before they became delinquent and should pay all fire insurance premiums, and in the event the mortgagor should fail to comply with any or all of the provisions of the mortgage the mortgagee might declare the whole sum due and foreclose the same. He alleged that the interest had not been paid, that the taxes had not been paid and that the insurance premiums had not been paid by the mortgagor, and in order to protect the property the mortgagee was com-

pelled to pay said amounts. The pleadings in the foreclosure suit were put at issue by defendant Heiberg, one of plaintiffs herein. The receiver and plaintiff Gabriel, who were defendants therein, defaulted. The cause came on for trial on August 27, 1930. Plaintiff therein appearing by attorney F. T. Collier and defendants L. Heiberg and Bertha Heiberg, his wife, by Butler & Jack, their attorneys. After hearing the testimony and argument of counsel, the court took the cause under consideration and on December 16, 1930, filed his decree foreclosing said mortgage.

In the suit for dissolution of the partnership Josephine Gabriel was represented by attorneys of her own selection, Mr. Tatro and Mr. Latourette. Mr. Heiberg was represented by his attorneys, Butler & Jack. The suit for partition, in which the parties were respectively represented by the same attorneys, was allowed to languish and finally be dismissed for want of prosecution. The action of Lalah Loney (Ames) against L. Heiberg, plaintiff, was represented by attorney Frank T. Collier and the defendant by attorneys Butler & Jack. This action was also finally dismissed for want of prosecution.

In the suit for dissolution of the partnership, the receiver sold some of the personal property by order of the court and conducted the business until after the property was sold on foreclosure, but was unable to find a buyer for it or to make it pay expenses in full. The receiver made a full itemized report to the court of all receipts and expenditures in connection with the business and the parties were notified that she would, on a day certain, apply for an order of confirmation of said report and her discharge as such receiver. The record, as it appears here, does not show what action the court took on this report but we assume that it was

approved and the receiver discharged. At any rate, no complaint is made in the instant case that the receiver did not fully account for all the receipts of the business.

In September, 1930, before decision in the foreclosure suit, plaintiff Gabriel discharged Mr. Collier as her attorney in all proceedings he had taken for her and employed other counsel. She and her counsel then demanded of Collier the refund to her of $600 paid to him. Mr. Collier retained $150 for his services already rendered and returned to her $450, yet she made no move in the foreclosure proceedings to open up her default or to institute any defense therein, but permitted the foreclosure to go to decree and sale.

■ There is no competent evidence of a conspiracy and it is evident that the jury so found and therefore returned a verdict in favor of defendants Lalah Loney and Earl Loney. The action is founded on tort and, if the allegations of conspiracy are not sustained, yet damages may be recovered against each or any of the defendants shown to have been guilty of a tortious act, against plaintiff whereby she was damaged. The allegation of conspiracy, if sustained: ''Only being important to connect a defendant with the transaction and to charge him with the acts and declarations of his co-conspirators, without which he would not be implicated.'': *Green v. Davies,* 182 N. Y. 499 (75 N. E. 536, 3 Ann. Cas. 310) ; *Empire Trust Company v. Improved Property Holding Company,* 232 Fed. 35.

Let us see what were the fraudulent or wrongful acts of defendant Collier. It is admitted that he had no dealings of any kind with plaintiff Heiberg except that he was attorney for Lalah Loney in her action against Heiberg in which action Heiberg now claims that a writ of attachment was fraudulently obtained.

However, in that action Heiberg was represented by his own attorneys to look after his interests and if counsel for plaintiff therein had wrongfully obtained a writ of attachment it would have been an easy matter to have had the writ recalled in that action, yet no motion for the purpose was made.

Plaintiffs claim that defendant Collier advised Josephine Gabriel to stay away from the trial of the foreclosure suit. The testimony of Mrs. Gabriel is that she was called into Portland the day before the trial by Mr. Collier and advised to stay there until after the trial was over and the mortgage foreclosed. This is what Mrs. Gabriel desired. The letter signed by her and her lay-business adviser, Mr. Alex Bonser, was to that effect. The letter was written July 15, 1930, and addressed to Mr. Frank T. Collier.

"In accordance with my conversation with Mr. Bonser this morning, it is understood that you are to foreclose the Ames mortgage on the property known as the Ames Auto Park.

I authorize you, as my attorney in this matter, to bring such action or actions as may be necessary against L. Heiberg to recover on the sum of $500.00 with interest on a promissory note, and to recover the amount of money I paid him for an undivided one-half interest in the real property and business known as the Ames Auto Park.

As soon as the mortgage is foreclosed and the amount is known, Mr. Bonser will assist me in refinancing the park.

Yours very truly,

JOSEPHINE GABRIEL

This is my understanding. ALEX BONSER"

The evidence shows that Mrs. Gabriel and Mr. Bonser, her friend, came to Mr. Collier's office to engage his services as an attorney to make a collection for her against the Seaboard Dairy Credit Cor-

poration as well as to bring an action against Mr. Heiberg, her co-plaintiff herein. Also to engage his good offices in assisting Mrs. Gabriel in getting the auto park and that Mr. Collier advised them at that time that on foreclosure of the first mortgage, the one which she assumed and agreed to pay, she could redeem from such foreclosure sale. There was no suggestion made at any time that there was any way of her getting possession and ownership of the park without paying off the indebtedness. This advice, Collier had a right to give. Heiberg did not issue a subpoena for Mrs. Gabriel in that suit.

■ There is no evidence in the record that Collier ever advised any one that he did not know the whereabouts of either of plaintiffs herein. Neither was he under any obligation to give such information or to keep himself informed as to where plaintiffs could be found.

■ Defendant Lalah Loney was under no obligations to plaintiffs not to assign her mortgage to Earl Loney, her husband. The plaintiffs could not complain that they were done any wrong by such an assignment. According to the complaint in the foreclosure suit, defendant Earl Loney had a right to foreclose the mortgage for non-payment of interest, for non-payment of taxes, for non-payment of insurance premiums, and, with the exception of non-payment of interest, the other defaults of the mortgagors were not denied. It would be useless for Lalah Loney, as receiver, to defend against the foreclosure of the mortgage when she had no defense. She should not incur costs when no possible benefit would be derived. She was appointed receiver on the request of plaintiffs herein, on the advice of their respective attorneys, with full knowledge of her interest in the property. The receiver was appointed to conduct the business and make a sale of it.

There is no competent testimony that the receiver did not make an honest attempt to carry out the orders of the court. The court's order was to get bids on the property and submit them to the court. No one appeared in court at any time and complained that she refused to make a sale of the property. Neither did plaintiffs produce any purchaser who was ready, willing and able to buy the premises. There is absolutely no testimony that Collier knew of any one wishing to buy the premises from the receiver.

■ Plaintiffs complain that defendant kept them in ignorance of what was transpiring in connection with the business. Everything that was done was a matter of record and plaintiffs could easily inform themselves. Defendants were under no obligation to furnish plaintiffs any further information.

The evidence shows that the plaintiff turned over to the receiver, at the time of her appointment, about $160 to apply on the payment of the current bills. The money was so applied, but was insufficient to pay all the outstanding bills of the partnership. The real reason for this complaint is found in the allegation that owing to the financial depression, for which defendants are not responsible, plaintiffs are unable to redeem from the foreclosure sale.

■ The defendants were entitled to a directed verdict. But the cause having been submitted to the jury and a verdict returned in favor of defendants Earl Loney and Lalah Loney, no prejudicial error was committed so far as they are concerned and the judgment in their favor will be affirmed. The judgment against defendant Collier will be reversed and the cause remanded with instructions to vacate the same and enter one in favor of defendant Collier for his costs and disbursements. It is so ordered.

RAND, C. J., BEAN and BAILEY, JJ., concur.