[L. A. No. 28303.   In Bank.   June 24, 1965.]

HARRY JEROME WILSON, Plaintiff and Appellant, v. E. H. BITTICK et al., Defendants and Respondents.

John J. Guerin for Plaintiff and Appellant.

Lauren M. Handley for Defendants and Respondents.

MOSK, J.—In this action for damages for the use and occupancy of a parcel of land plaintiff appeals from a summary judgment entered in favor of defendants Bittick and Frakes.[1]

This is but one more step in apparently interminable litigation begun some 13 years ago over the title to and rents or profits from a half section of unimproved farmland in Los Angeles County. The principal protagonists in this wordy drama are plaintiff and Burton A. Browne, each of whom claimed sole ownership of the disputed parcel; assuming the roles of innocent spectators are Bittick and Frakes, brothers-in-law who dry-farmed the land from 1943 to 1958 assertedly under leases from Browne and his predecessor.

The present action is the fourth to be filed in this litigation.[2] On December 3, 1952, Browne began matters by suing to quiet title to the half section of land (Los Angeles Superior Court No. 606,910). Plaintiff answered and denied Browne's title, but on December 4, 1957, the action was dismissed for want of prosecution (Code Civ. Proc., § 583).

On December 13, 1957, Browne filed a second suit to quiet

[1]The demurrer of a third defendant, Burton A. Browne, was sustained with leave to amend.

[2]In preparing the following summary we have been assisted by the able and painstaking review of these cases compiled by the trial court.

title against plaintiff and others (No. 692,013). On September 8, 1958, plaintiff filed an amended answer claiming ownership of the entire half section. On the same day, however, the question of title was settled by a stipulated judgment in which plaintiff and Browne divided the half section equally between them, plaintiff taking the eastern quarter and Browne the western quarter. The judgment debarred each party "from ever asserting any right, title, interest, . . . claim or demand in or to" the parcel owned by the other.

Meanwhile, on January 3, 1958, plaintiff filed an action in ejectment against Frakes and several Does (No. 693,039), claiming ownership of the entire half section, alleging that the defendants had been unlawfully in possession since 1953, and seeking damages for "rents" for the period from January 1955 to January 1958, plus exemplary damages. Both Frakes and Bittick answered, admitting possession but denying plaintiff's title and alleging their right to hold the property as tenants under a lease from Browne. Plaintiff objected to Bittick's appearance, but on January 30, 1958, the court on Bittick's motion ordered the latter brought into the case as an indispensable party defendant. Four days later, however, plaintiff voluntarily dismissed the action as to Bittick. Accordingly, the court thereafter granted Frakes' motion to dismiss the action as to him because of plaintiff's failure to join an indispensable party (Code Civ. Proc., § 389). Plaintiff appealed. In affirming the judgment of dismissal the District Court of Appeal added thereto the qualification that it was "without prejudice," as required by section 389. (*Wilson* v. *Frakes* (1960) 178 Cal.App.2d 580, 585 [3 Cal.Rptr. 434].)[3]

On December 16, 1958, plaintiff filed the present action against Browne, Bittick, and Frakes (No. 713,749). In his original complaint plaintiff claimed ownership of the eastern quarter only; alleging that within the three previous years (i.e., December 16, 1955, to December 16, 1958) the defendants wrongfully entered such property and harvested crops, plaintiff prayed for both compensatory and exemplary damages. After a demurrer was sustained plaintiff filed a first amended complaint. Bittick and Frakes answered, (1) denying plaintiff's title prior to September 8, 1958, the date of

---

[3]In December 1962 the action was dismissed as to Browne for the same reason. Undaunted by the prior opinion, plaintiff appealed from this dismissal as well. The appeal was subsequently dismissed by stipulation.

the stipulated judgment in the second quiet title action; (2) claiming the right to hold the land during the period in question as tenants under a lease from Browne;[4] (3) declaring that they had impounded the rents for the years 1957 and 1958, and praying that the court determine to whom and in what proportions such money should be paid; (4) alleging that in the prior ejectment action (No. 693,039, then on appeal) the same issues were presented and judgments of dismissal were entered as to them; and (5) by amended answer, adding the defense of the statute of limitations.

On April 16, 1963, plaintiff filed a second amended complaint, now claiming ownership of the *entire* half section from January 12, 1953, to September 11, 1958. Again alleging that in the three years preceding the filing of the original complaint the defendants wrongfully entered such property and harvested crops, plaintiff prayed for compensatory and exemplary damages.

After interposing a demurrer, Bittick and Frakes filed a motion for summary judgment, principally on the grounds of vexatious litigation, res judicata, and the statute of limitations. The notice of motion incorporated by reference the files of the three previous superior court actions in these proceedings. The court took judicial notice of such files and granted summary judgment "for all the reasons set forth in the Notice of Motion," striking plaintiff's second amended complaint as to Bittick and Frakes and ordering the action dismissed as to them.

We recently reviewed the powers and duties of trial courts in ruling on motions for summary judgment: ██ "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. ██ Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ██ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ██ ██ In examining the sufficiency of affidavits filed in connection with the motion, the affidavits

---

[4]The lease expired on September 1, 1958, and Bittick and Frakes quit the premises on that date.

of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should ▮ be resolved in favor of the party opposing the motion. ▮ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

▮ In the case at bar plaintiff's counteraffidavit raised a number of triable issues of fact, such as the ownership of the property during the years in question, the right to collect rents or profits therefrom, the continued use and occupancy of the property by Bittick and Frakes after plaintiff assertedly gave notice of his title, and the value of the crops harvested. Accordingly, unless the trial court was correct in ruling that Bittick and Frakes had a complete defense on one or more theories of law, the motion for summary judgment should not have been granted. We turn now to a consideration of those theories.

It is first urged in support of the judgment that the present action constitutes harassing and vexatious litigation which plaintiff should be denied the right to prosecute. The facts do not adequately support this contention. Of the four suits brought thus far to adjudicate the title to and profits from this property, the first two were instituted by Browne and only the last two by this plaintiff. ▮ The claim of vexatiousness must therefore rest upon the fact that it was plaintiff's voluntary act of dismissing the ejectment action as to an indispensable party which caused that action to be prematurely terminated, making another action necessary to reach the merits of the controversy. But the governing statute (Code Civ. Proc., § 389, par. 3) expressly provides that in cases of refusal to comply with an order to bring in an indispensable party, which in effect is what happened here, the court "shall dismiss without prejudice" all causes of action to which such party is indispensable. After a dismissal "without prejudice," of course, a new lawsuit asserting the same causes of action but joining the indispensable party may be instituted as a matter of right within the period of limitation.

▮ For similar reasons the doctrine of res judicata cannot be invoked. A judgment on the merits is a mandatory prerequisite to applicability of that doctrine (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810, 813 [122 P.2d

892]) and no such judgment was entered in the ejectment action. ▆▆▆ The involuntary dismissal which terminated that proceeding was in no sense a ruling on the substance of plaintiff's claim (cf. *Gonsalves* v. *Bank of America* (1940) 16 Cal.2d 169, 172-173 [105 P.2d 118]; *Ensher* v. *Ensher, Alexander & Barsoom* (1960) 187 Cal.App.2d 407, 411 [9 Cal.Rptr. 732]; *Kinley* v. *Alexander* (1955) 137 Cal.App.2d 382, 387 [290 P.2d 287]); on the contrary, the decision in *Wilson* v. *Frakes* (1960) *supra,* 178 Cal.App.2d 580, settled as the law of this case plaintiff's right to file another action for the precise purpose of obtaining a judgment on the merits (Code Civ. Proc., § 389, par. 3).

▆▆▆ The third ground urged in support of the summary judgment is that the action is barred by the statute of limitations. This contention appears the most plausible, but upon analysis it too fails to find support in the facts. The applicable periods of limitation are three years for an action for trespass upon or injury to real property (Code Civ. Proc., § 338, subd. 2) and five years for an action for mesne profits (Code Civ. Proc., § 336). Neither statute barred plaintiff's original complaint, filed on December 16, 1958, in which damages were sought for the immediately preceding three years. That complaint, however, charged defendants with trespassing upon the eastern quarter only of the half section of land in dispute. In his second amended complaint, filed April 16, 1963, plaintiff sought damages for trespass committed during the same period but upon the entire half section. The question to be resolved is whether the second amended complaint may be deemed to "relate back" to the filing date of the original complaint so as to avoid the bar of the statute of limitations.[5]

The sole decision found to be in point is the early case of *Atkinson* v. *Amador & Sacramento Canal Co.* (1878) 53 Cal. 102, 105-106. That was a trespass action, brought to recover for injury to the plaintiff's farmlands caused by debris from the defendant's hydraulic mining operations. While the reported facts are not altogether clear, it appears that the plaintiff owned several adjacent parcels or ranches; that the original complaint did not include one of these, known as

---

[5]If the second amended complaint is not thus deemed to relate back, recovery for trespass on the western quarter section will be totally barred by the three-year statute and recovery for mesne profits from the use of that property will be limited to the period between April 16, 1958, and December 16, 1958. Plaintiff's claim with respect to the eastern quarter will remain unaffected by either statute of limitations, for the amended pleading adds nothing to the original in that respect.

the Clark Ranch, in the description of the land injured by the debris; that the plaintiff thereafter filed an amended complaint including the Clark Ranch and praying for damages for injuries committed thereon in the three years prior to the original complaint. The trial court refused the defendant's instruction limiting recovery for injuries to the Clark Ranch to the three-year period preceding the filing of the amended complaint. This court reversed, holding that the instruction should have been given because "The amended complaint, insofar as it counted upon the injury done to that ranch, was the introduction of *a new cause of action*; and against which the defendant had the right to plead, and did plead, the Statute of Limitations." (Italics added.)

As the emphasized language indicates, at the time of the *Atkinson* decision the test for determining whether an amended pleading was allowable and hence would relate back to the date of the original pleading was simply whether or not it stated "a new cause of action." Subsequent decisions explaining or distinguishing *Atkinson* make this clear. (See, e.g., *Nellis* v. *Pacific Bank* (1899) 127 Cal. 166, 168 [59 P. 830]; *Frost* v. *Witter* (1901) 132 Cal. 421, 428 [64 P. 705, 84 Am.St.Rep. 53]; *Most Worshipful Sons* v. *Sons etc. Lodge* (1958) 160 Cal.App.2d 560, 565 [325 P.2d 606].)[6] But whether or not "a new cause of action" is stated is no longer the test. In *Austin* v. *Massachusetts Bonding & Ins. Co.* (1961) 56 Cal.2d 596, 600-601 [15 Cal.Rptr. 817, 364 P.2d 681], this court reviewed the relevant decisions beginning with those of the *Atkinson* vintage, and found "a development which, in furtherance of the policy that cases should be decided on their merits, gradually broadened the right of a party to amend a pleading without incurring the bar of the statute of limitations." In its modern formulation (*id.* at p. 600

---

[6] Typical of the restrictive approach to this question in the *Atkinson* period is *Anderson* v. *Mayers* (1875) 50 Cal. 525, 527. In that case the plaintiff had obtained a judgment against the defendant on a promissory note in a Nevada court; the defendant apparently went to California without satisfying the judgment; and the plaintiff brought an action on the judgment in a California court. In his first amended complaint the plaintiff set forth the terms of the note in *haec verba*. The case went to trial on the plaintiff's second amended complaint, in which he had deleted all references to the Nevada judgment and sought to recover on the note itself. At the time of the filing of the latter complaint, however, the period of limitation for an original action on a note executed out of state had expired. Defendant's motion for nonsuit was granted. In affirming, this court held that the second amended complaint stated "a new cause of action" (i.e., on the note rather than on the prior judgment) and hence was barred by the statute of limitations.

of 56 Cal.2d) the rule is that "the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the *same general set of facts.*" (Italics added.) (See also Clark on Code Pleading (2d ed. 1947) pp. 718, 731.) It is the modern rule which must govern the case before us; no longer responsive to that rule, *Atkinson* v. *Amador & Sacramento Canal Co.* (1878) *supra,* 53 Cal. 102, is overruled.

The "general set of facts" underlying the pleadings here is not merely an alleged trespass on the quarter section mentioned in the complaint filed on December 16, 1958; rather, it is the lengthy dispute between all these parties over the title to and rents or profits from the entire half section of land. The first phase of that dispute was settled by the stipulated judgment of September 8, 1958, dividing the property equally between plaintiff and Browne. Remaining unresolved by that judgment was the issue of the right to the rents or profits from the farming operations of Bittick and Frakes on the half section during the years preceding the 1958 settlement. Plaintiff asserted his claim to all such rents or profits when he filed the ejectment action in January 1958. That proceeding aborted, as we have seen. In his original complaint in the present action plaintiff omitted to claim for damages arising from the use and occupancy of the western quarter. To explain this omission he now says that the original complaint was filed during the pendency of his appeal from the judgment of dismissal in the ejectment action, a period during which he was "uncertain as to his rights" in respect of the western quarter. Plaintiff is an attorney licensed to practice in this state, and in view of his history of asserting what he conceives to be his legal rights this explanation seems unconvincing. But whatever plaintiff's motive may have been for temporarily omitting the western quarter from his claim, it would be totally unrealistic at this late date to hold that by doing so he somehow restricted the "general set of facts" underlying this litigation to the eastern quarter alone.

A further reason appears for allowing the amendment to relate back to the original complaint in the circumstances of this case. ▆▆▆ A showing that the defendant was prejudiced by the late filing of an amended complaint is not, of course, a prerequisite to invoking the bar of limitations when the statute otherwise applies (*Lobrovich* v. *Georgison* (1956) 144 Cal.App.2d 567, 575 [301 P.2d 460]); yet the absence

of such prejudice may be relevant in determining whether the amendment was proper because based on the same ''general set of facts'' as originally pleaded. Thus in the case at bar Bittick and Frakes have at no time been under any possible misapprehension as to the extent of plaintiff's claim against them since the filing of the ejectment action. Indeed, in his affidavit in support of the motion for summary judgment counsel for Bittick and Frakes avers that ''Case No. 693 039 [i.e., the ejectment action] involves the same parties as this case and *the same property, i.e., 'The South ½ of Section 3* Township 8 North Range 16 West S. B. B. M.,' and involves the same period of time, January 12, 1953 to January 3, 1958, and is for ejectment and damages in the nature of rents, issues and profits.'' (Italics added.)

Moreover, Bittick and Frakes have themselves always treated the half section as a single unit, basing their right to farm it on a lease from Browne of the whole parcel. Hence their defense to the second amended complaint will apparently be identical to that which they pleaded in answer to both the first amended complaint in this case and the complaint in the ejectment action, i.e., admitting occupancy and use of the land but denying plaintiff's title and asserting their rights as tenants under the lease. It follows that Bittick and Frakes are in no position to claim surprise at plaintiff's renewed assertion of rights in the entire half section of land. (Cf. *Dougherty* v. *California Kettleman etc., Inc.* (1937) 9 Cal.2d 58, 87 [69 P.2d 155].) Such rights have been in issue, in one form or another, from the beginning of this litigation, and both of the pleadings under discussion should therefore be deemed to arise out of the ''same general set of facts.''[7]

There appearing to be no absolute defense to the action and plaintiff having shown by affidavit a number of triable issues of fact, the trial court erred in granting summary judgment.

Plaintiff has filed a motion in this appeal to strike all or

---

[7]After adding the western quarter section to the claim the only other change made by the second amended complaint was to double the amount of compensatory damages sought. It is settled that a complaint may be amended to increase the amount of damages prayed for without incurring the bar of the statute of limitations. (*Hougham* v. *Eyherabide* (1951) 103 Cal.App.2d 673, 675 [230 P.2d 139]; *Babcock* v. *Jewell* (1930) 110 Cal.App. 323, 325-326 [294 P. 30].)

In view of our disposition of the appeal we need not reach plaintiff's contention as to the form and adequacy of the affidavit filed in support of the motion for summary judgment.

part of the brief of the respondents (Bittick and Frakes) because it allegedly contains "untruthful, disrespectful, abusive, and defamatory language." Respondents have filed a similar motion. These motions are devoid of merit.[8]

All motions to strike are denied; the summary judgment is reversed; and in the interests of justice the parties will bear their own costs on appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

---

[8]Plaintiff's discussion of the so-called "untruthful" statements of the respondents is largely a reargument of factual matters presented in his briefs; and the tone of injured dignity he adopts in complaining of the respondents' assertedly "disrespectful" language ill becomes one who by his dilatory tactics has given everyone concerned ample cause to lose patience with him. Indeed, the mere fact that plaintiff filed such a frivolous motion, consuming additional time and effort of the parties and this court, is still another example of his apparently incurable litigiousness. (See, e.g., *Wilson* v. *Ostly* (1959) 173 Cal.App.2d 78, 79 [343 P.2d 349].) To forestall future misunderstanding it might be well for us to make our position clear in this respect. As the District Court of Appeal properly observed (*Wilson* v. *Frakes* (1960) *supra*, 178 Cal. App.2d 580, 584-585), by his act of dismissing as to a party ruled indispensable in the ejectment action, plaintiff "took a step calculated to thwart" the lower court's order and thereby rendered that action untriable. In the present case we disagree with the trial court on the law but agree with its desire to expedite the conduct of this litigation, and we share its disapproval of plaintiff's procedural maneuvering. Plaintiff's conduct has not yet brought him within the statutory category of a "vexatious litigant" (Code Civ. Proc., §§ 391-391.6), nor does it yet call for the imposition of a penalty on appeal as requested by the respondents (Cal. Rules of Court, rule 26 (a)). But plaintiff should keep these sanctions in mind when the cause goes back for trial.